## CITY OF BEAUMONT INDEPENDENT SCHOOL DIST. et al. v. BROADUS et al.

### No. 5608.

Court of Civil Appeals of Texas. Amarillo.
June 5, 1944.

Rehearing Denied Sept. 11, 1944.

W. A. Tatum and H. R. Clayton, both of Beaumont, for appellants.

S. D. Bennett & J. B. Morris, both of Beaumont, for appellee French Independent School Dist.

John G. Tucker & David L. Broadus, both of Beaumont, for appellees David L. Broadus, Kitty G. Broadus, John G. Tucker, Robert H. Park and Parmer E. Lee.

HEARE, Justice.

This is a controversy between the City of Beaumont Independent School District and the City of Beaumont, on the one hand, and the French Independent School District, on the other hand, as to whether certain territory which has been annexed to the City of Beaumont as a municipality has thereby become a part of the City of Beaumont Independent School District and detached

from the French Independent School District.

David L. Broadus and wife, by action of interpleader, complained that both the French Independent School District and the City of Beaumont Independent School District were levying school taxes against the plaintiffs' property and sought a decree of the court requiring the defendants to interplead among themselves to the end that it might be judicially determined which school district had the right to levy and collect taxes from the plaintiffs. Other property owners similarly situated intervened and all parties tendered the payment of taxes into court.

The properties involved are situated either in the Idylwood Estates Addition or the Emma Reed Addition, both being additions to the City of Beaumont, and having been annexed to the city by petitions of the residents of the subdivisions and by the enactment of ordinances by the city commission in 1939 and 1940. Prior to the date of these annexing ordinances, the properties were located within the bounds of the French Independent School District.

The City of Beaumont is a municipal corporation with more than five thousand inhabitants, acting under a home-rule charter adopted by the people of the city at an election held on December 30, 1919. The charter provides that the City of Beaumont shall constitute an independent school district subject to the general laws of the State applicable thereto, except where in conflict with the charter, and that the public schools shall be under the management and control of a board of trustees. The charter further provides for the extension of the municipal limits by written petition of a majority of the property owners who are citizens of the State and inhabitants of the affected territory adjoining the city and the passing of an annexing ordinance by the commission of the City of Beaumont, and also provides for the levy of additional taxes for school purposes.

The French Independent School District was incorporated by an Act of the Legislature in 1925, Sp.Laws 1925, c. 22.

The case was tried without a jury and judgment was entered in favor of French Independent School District. The court recited in the judgment "that the annexations to the City of Beaumont of said Emma Reed and Idylwood Estates Additions by the aforesaid ordinances did not and could not, as a matter of law, extend the boundaries of the City of Beaumont Independent School District into the territorial limits of the defendant, French Independent School District, so as to detach from said French Independent School District the said Emma Reed and Idylwood Estates Additions, and the Court further finds as a matter of law that to annex the Emma Reed and Idylwood Estates Additions to the City of Beaumont Independent School District, the procedure as set out in Article 2742e, Sec. 2, Acts 1929, 41st Leg., First C.S. p. 259, ch. 109 and Article 2742f, Sec. 1, Acts 1929, 41st Leg., First C.S., p. 106, ch. 47, must be followed and complied with, and that same has not been done." The City of Beaumont and the City of Beaumont Independent School District perfected an appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District and the cause has, by order of the Supreme Court, been transferred to this Court for determination.

### Opinion

The principal question involved in the determination of this case is whether Article 2804, R.C.S.1925, has been repealed by the Legislature. The appellee, French Independent School District, contends that it has been repealed by virtue of the enactment of Articles 2742e and 2742f, more specifically described in the above-quoted portion of the judgment, and which we shall hereinafter refer to as the 1929 Acts. The two 1929 Acts, above referred to, are now in effect and must be construed together. County School Trustees v. District Trustees, 137 Tex. 125, 153 S.W.2d 434; Board of School Trustees of Young County v. Bullock Common School District No. 12, Tex.Com.App., 55 S.W.2d 538.

Without repeating all the terms of the two applicable sections of the 1929 Acts, we here note that provision is made therein that in each county of this State the county board of trustees shall have the authority, when duly petitioned as provided in said Acts, to detach from, and annex to, any school district territory contiguous to the common boundary line of the two districts, provided the board of trustees of the district to which the annexation is to be made approves by majority vote the proposed transfer of territory. The Acts provide for further procedure if more than ten per cent of the district is involved, but that provision is not material to the case at bar. We now quote the repealing clause of the

1929 Acts: Chapter 47, Section 3. "All laws and parts of laws, General and Special, in conflict herewith are hereby repealed, and Sections 1, 2, 3, and 4 of Chapter 84, Acts of the 40th Legislature, First Called Session, and Article 2765, Revised Civil Statutes, 1925, are specifically repealed."

Article 2804, R.C.S. 1925, which the appellee contends has been repealed by the 1929 Acts, reads as follows:

"Whenever the limits of any incorporated city or town constituting an independent school district are so extended or enlarged as to embrace the whole or any part of any independent or common school district adjacent to such incorporated city or town, that portion of such adjacent district so embraced within the corporate limits of such incorporated city or town shall thereafter become a part of the independent school district constituted by such incorporated city or town.

"If within the portion of such district so embraced there should be situated any real property belonging to such district, such city or town may acquire the same upon such terms as may be mutually agreed upon between the governing body of such city or town and the authorities of such district.

"This article shall not apply where it shall be determined at an election held within such city or town by majority vote of those voting thereon that the territory or any portion thereof to be so embraced shall not thereby become a part of the independent school district constituted by such city or town, but shall be taken into the city limits for municipal purposes only, and shall remain for school purposes a portion of the adjacent independent or common school district as though said city limits had not been extended."

No election was held determining that the territory involved in this suit should not become a part of the independent school district constituted by the City of Beaumont.

Justice Critz, speaking for the Supreme Court in County School Trustees v. District Trustees, supra [137 Tex. 125, 153 S.W.2d 436], states: "In the beginning of this discussion we will say that this Court finds the school laws of this State very confusing and difficult of proper interpretation." To this eminently correct statement we add a fervent amen.

In order properly to discuss the issue before the Court, we deem it necessary to review the legislative history of Article 2804 and of the law giving municipalities authority to control the public free schools within their limits. In 1875, the Fourteenth Legislature enacted Chapter CIII, page 161 (8 Gammel's Laws of Texas 533), which authorized incorporated cities "to assume control of the public schools within their limits, to build school houses." It was provided in that Act that when such incorporated city did so assume "the control of the public education within its limits, the county board of directors may, when it is deemed expedient, redistrict the territory left under their control to suit the changed relations of the scholastic population." Acceptance of the provisions of the Act was evidenced by furnishing the county superintendent and the superintendent of public instruction certified copies of the resolutions of the city council by which the acceptance was made.

In 1879, the Sixteenth Legislature enacted Chapter LXVII, page 76, (8 Gammel's Laws of Texas 1376), which provided that "any city or town in this State may acquire the *exclusive control* of the public free schools *within its limits*." (Emphasis ours.) Provision was made for an election within the city to determine whether such exclusive control of the schools should be assumed by the city and whether the schools should be under the control of a board of trustees or the city council. If trustees were preferred, provision for their election was made. This Act was brought forward in the Revised Statutes of 1879 as Articles 3781 et seq., which provided that such city or town having control of schools within its limits should constitute a separate school district. No statutory provision appears to have been made, however, for a separate board of trustees, all authority being vested in the council or board of aldermen of the city or town. The terms "exclusive control" and "within its limits" were employed in the 1879 statutes.

The Revised Statutes of 1895, Title 86, Chapter 16, Article 4004 et seq., brought forward the same provisions but restored the provision for a board of trustees, and made other provisions not here material. The terms "exclusive control" and "within its limits" were still employed in referring to the relationship of the city to the school.

In 1905, the Twenty-ninth Legislature enacted a comprehensive law providing for "a more efficient system of public free schools for the State of Texas," and appar-

ently attempted to rewrite all the school law. Acts, Twenty-ninth Legislature, Regular Session, Chapter 124, page 263. That part of the Act referring to cities and towns in relation to the schools is as follows:

"Sec. 133. All cities and towns which have heretofore, under the Act of May 2, 1875, or any subsequent law, assumed control of the public free schools within their limits, and have continued to exercise the same until the present time, or may hereafter determine so to do by a majority vote of the property taxpayers of said city or town voting at an election held for that purpose, may have exclusive control of the public free schools within their limits.

"Sec. 134. Any city or town in this State may acquire the exclusive control of the public free schools within its limits." Vernon's Ann.Civ.St. art. 2768.

Section 148 of the Act provides a method for the "extension of city limits for school purposes only" upon a petition of a majority of the resident qualified voters of the territory to be taken into the city only for such purpose. This Section 148 is practically the same provision as was later contained in Article 2883, R.C.S.1911, and as is now contained in Article 2803, R.C.S.1925, Vernon's Ann.Civ.St. art. 2803. The above-referred to Section 133 et seq. from the Act of 1905 were brought forward in the 1911 revision of the statutes, Vernon's Ann.Civ. St. art. 2767 et seq. In 1917, the First Called Session of the Thirty-Fifth Legislature, by enactment of Chapter 28, page 35, amended Chapter 15, Title 48, R.C.S.1911, by adding Article 2815-C. This article as then enacted is substantially the same law as the first two paragraphs of Article 2804, R.C.S.1925, above quoted. In 1919, the Thirty-Sixth Legislature (Acts Second Called Session, Chapter 44, page 101) amended Article 2815-C by adding what is now the third paragraph of Article 2804, providing that the automatic enlargement of school boundaries coextensive with the enlargement of municipal boundaries should not result if it were determined by the voters of the incorporated city that the added territory taken into the municipal limits should not be taken in for school purposes. As has been indicated, the provisions of the 1917 and 1919 Acts were brought forward in the 1925 codification as Article 2804 and are now the law, unless, as contended by the appellee, they have been repealed by the 1929 Acts referred to above.

The legislative history of the creation and authority of county boards of trustees is likewise pertinent. Prior to 1911, the commissioners' court exercised control of school district boundaries. Acts of 1905, Chapter 124, page 263, sections 50, 51, and 52. In 1911, the Thirty-Second Legislature, by Chapter 26, page 34, of its Acts, first created the county board of trustees and gave them control of county high schools established, or that might be established, in common school districts, and also provided that "all rights and powers pertaining to the public free schools of the county that have heretofore been vested in the commissioners court and that are not prescribed by this Act, shall hereafter be vested in the county school trustees." The 1911 Act was amended in 1915 by the Thirty-Fourth Legislature, Acts Regular Session, Chapter 36, page 68, and provided that the general management and control of the public free schools in each county of the State should be vested in five county school trustees, making provision for their election, and further providing: "Sec. 4. The county school trustees are authorized to exercise the authority heretofore vested in the county commissioners court with respect to subdividing the county into school districts, and to making changes in school district lines."

It was also provided that "a record of school districts" should be kept by the county board, showing the field notes of all changes made in the school district lines. It is apparent, however, that the Act did not refer to schools over which cities and towns had assumed exclusive control. This Act was carried forward in the 1925 codification, Title 49, Chapter 11. Article 2681 relates particularly to school district boundaries. Then followed the 1929 Acts, above referred to, which the appellee contends brought about an express repeal of Article 2804.

As an example of some of the apparent confusion in the law, we note that, although in 1915 the Legislature provided that the county school trustees were authorized to exercise the authority theretofore vested in the county commissioners' court in respect to school district lines, yet the 1925 Code, Article 2766, granted to the *commissioners' court* of any county, subject to some restric-

tion, the authority to change the boundaries of any independent school district incorporated for school purposes only. In the same Code, Article 2681, the county school trustees were authorized to exercise the authority theretofore vested in the commissioners' court in respect to subdividing the county into school districts and making changes in school district lines. The same 1925 Code also contained Article 2804. At least, it cannot be said that the power of the county school trustees over all school district lines in a county was exclusive in 1925.

The constitutionality of Article 2804 has been upheld. Tod v. City of Houston, Tex.Com.App., 276 S.W. 419. The purpose behind the law as set forth in the article is founded upon good reason. "It is generally better for people to be a part of the same school district and city." Id., 276 S.W. at page 423.

The French Independent School District, in its corporate capacity, has no vested right in respect to the territorial boundaries of the district as originally established. Prosper Independent School District v. County School Trustees, Tex.Com.App., 58 S.W.2d 5. The Legislature has authority to change at will the territorial boundaries of any school district and to provide the mode and agencies by which such change shall be effected. Id., and authorities therein cited.

The 1929 Acts expressly repealed Article 2765, R.C.S.1925, and sections 1, 2, 3, and 4 of Chapter 84, Acts of the Fortieth Legislature, First Called Session (1927). Article 2765 pertained to an extension of boundaries of an area incorporated for free school purposes only. Section 1 of Chapter 84 provided for the annexation of territory out of a common school district to a contiguous independent school district through the method of an election held by the voters residing in the affected territory. Section 2 of the same Act provided a method for detaching territory from an independent or common school district to be annexed to some other independent or common school district for the purpose of forming a new district. Section 3 provided for an election to bring about the abolition of a common school district and the annexing of its territory to one or more contiguous school districts. Section 4 contained provisions restricting or limiting the proceedings in the first three sections.

If Article 2804 was thus repealed, as contended by the French Independent School District, it must be said to have been repealed by the general clause in the 1929 Acts, repealing "all laws and parts of laws, General and Special, in conflict herewith." Express repeals fall into two classes, general and specific. Specific repeal expressly specifies the act, article, or section marked for repeal. A general repeal is accomplished by declaring that all acts and parts of acts in conflict with the new enactment are repealed. This accomplishes a repeal of prior laws that are repugnant to, or inconsistent with, the provisions of the later law. This method, however, often leaves the question of repeal in doubt, because it leaves open the question of what acts are inconsistent with, or repugnant to, the new law. 39 Tex.Jur. 130; 59 C.J. 900, § 501 et seq. As we view it, the 1929 Acts were not intended to be a general rewriting of the school law with reference to school district boundaries. Therefore, the general repealing clause contained in said Acts extended only to conflicting statutes and provisions. 50 Amer.Jur. 529.

Is there irreconcilable conflict between the 1929 Acts and Article 2804? We see no reason why both laws cannot be permitted to stand. We find in the legislative history of the laws relating to municipal school districts and other school districts in the county a manifest intention on the part of the law-making body to provide for two separate classifications of districts, namely, those located within a municipality, over which the city or town has assumed control, and those located without the limits of an incorporated city or town. From as early as 1875, and without interruption, provision has been made for the control of public free schools within the limits of a municipality either by the city council or by a board of trustees selected in some manner for the purpose of governing the schools within the limits of the city. The courts have heretofore recognized this classification. Rosebud Independent School District v. Richardson, Tex.Civ.App., 2 S.W.2d 513; Washington Heights Independent School District v. City of Fort Worth, Tex.Civ.App., 251 S.W. 341; Temple Independent School District v. Proctor, Tex.Civ.App., 97 S.W.2d 1047, error refused. The legislative history of the Acts creating the county board of trustees and placing public free schools under its con-

trol likewise demonstrates that its jurisdiction was never intended to extend to those schools over which municipalities had assumed exclusive control. In the Act of 1875, authorizing cities and towns to take control of their schools, it was provided that the "county board of directors" should redistrict the remaining territory in the county in order to accommodate the changed condition. It has never been recognized that the commissioners' court had authority over municipally controlled schools. The county board of trustees succeeded in this respect to the authority of the commissioners' court. In short, the separation of jurisdiction between the two school-governing bodies has always been recognized by the Legislature, unless the 1929 Acts were intended to constitute a merger of their authority over school district boundaries.

It should be borne in mind that in the instant case it is unnecessary for this Court to determine whether the county board of trustees has any authority over the district boundary lines of the Beaumont Independent School District by virtue of the 1929 Acts. The county board of trustees has taken no action whatsoever in the matter. The only question before this Court is the effect the annexation of Idylwood Estates Addition and Emma Reed Addition to the City of Beaumont has had on the common boundary line between the Beaumont Independent School District and the French Independent School District.

█ It is the considered opinion of this Court that Article 2804 has not been expressly repealed. Nor has it been repealed by implication. Cole v. State, 106 Tex. 472, 170 S.W. 1036; Fortinberry v. State, Tex.Com.App., 283 S.W. 146. It therefore necessarily follows that the annexing of Idylwood Estates Addition and Emma Reed Addition to the City of Beaumont also annexed them for school purposes and they became a part of the Beaumont Independent School District. It likewise follows that the trial court erred in entering judgment in favor of the French Independent School District as against the City of Beaumont and the Beaumont Independent School District. The judgment of the trial court will therefore be. reversed, and the cause will be remanded with instructions to the trial court to determine the amount of taxes due the Beaumont Independent School District by the property owners tendering the payment of their school taxes herein, and to render judgment in favor of the Beaumont Independent School District and against the French Independent School District, in accordance with this opinion. All costs are taxed against the appellee, French Independent School District.

On Motion for Rehearing.

The appellee, French Independent School District, has presented its motion for a rehearing and asserts therein that this Court has committed fundamental error in not adjudging as void the two 1939 ordinances by which the City of Beaumont sought to annex the two respective Additions. Because of a possible misinterpretation of the statement of the case in our original opinion, we deem it advisable to point out that the determination of the question of the validity vel non of the 1939 ordinances is not necessary in the disposition of this case. The suit involves the 1942 school taxes, the original interpleaders alleging that both the City of Beaumont and French Independent School District levied, assessed, and collected school taxes on the properties of the interpleaders for the year 1941, and were each likewise claiming and attempting to collect school taxes on the properties for the year 1942. The interpleaders offered to pay their 1942 school taxes to the district entitled to the same and tendered the same into court. No school taxes for the year 1940 are here involved. We have necessarily determined that the annexing ordinances of 1940 are valid, but our opinion is not to be construed as passing upon the validity of the 1939 ordinances. In justice to the said appellee, we confess that because of some of the verbiage employed in our statement of the case, a different construction might be placed on the opinion, but we here disclaim any intention of determining the effect of the 1939 ordinances, because such determination is wholly unnecessary to a disposition of the issues before the Court. The remaining assignments in the appellee's motion for a rehearing have been considered but we adhere to our original opinion. The motion is overruled.