## SOUTHWESTERN ASSOCIATED TEL. CO. v. CITY OF DALHART et al.

No. 6274.

Court of Civil Appeals of Texas. Amarillo.

Nov. 24, 1952.

Rehearing Denied Dec. 22, 1952.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Locke, Locke & Purnell, Dallas, Frank M. Tatum, Dalhart, for appellant.

King Fike and Frank McCowan, Dalhart, for appellees.

PITTS, Chief Judge.

This is an appeal from an interlocutory order denying a temporary injunction through an application for which appellant, Southwestern Associated Telephone Company, sought ultimate relief against appellees, The City of Dalhart and its city officials, in getting a raise in its city telephone rates. In support of its affirmative injunctive relief sought appellant pleaded by a verified pleading the authority of the City Council of the City of Dalhart, by virtue of Article 1119, Revised Civil Statutes, as amended, Vernon's Ann.Civ.St. art. 1119, and a city ordinance enacted of date August 31, 1921, giving the said Council power and making it the duty of the Council to fix reasonable telephone rates for appellant, but the said City Council had refused to follow the mandate given it by the said authority to the irreparable injury of appellant by reason of losses suffered and the confiscation of its property. For which reasons appellant sought in this action to temporarily restrain appellees (1) from enforcing or attempting to enforce the collection from appellant of the telephone rates prescribed and set forth in the city ordinance pleaded by appellant as heretofore stated; (2) from assessing or seeking to enforce against appellant any fine or penalty because of appellant's failure to charge and collect only the telephone rates prescribed and set forth in the city ordinance previously referred to; (3) and from interfering in any way with appellant's promulgating, charging and collecting what it alleges to be fair and reasonable rates and charges for telephone services in Dalhart until the City Council shall prescribe fair and reasonable rates and charges for such telephone service in the said City. Appellant is seeking ultimate affirmative relief by means only of a restrictive order.

Appellees answered with a verified plea in abatement, alleging that appellant had failed to comply with the methods prescribed for the raising of telephone rates as set forth in the city ordinance pleaded by appellant and its suit for injunctive relief was prematurely filed and should be dismissed. Subject to their said plea in abatement, appellees, by a verified pleading, excepted to the pleadings of appellant on the grounds of insufficiency of its pleadings and a failure to state a cause of action since it sought no relief other than injunctive relief and failed to allege any proposed rate it sought to promulgate or charge. They further excepted on the grounds that appellant based its figures alleging losses for the year of 1951 only and there were no allegations to the effect that such conditions continued to exist for the year 1952 at the time the said suit was filed on June 30, 1952; that no pleadings existed charging appellees of attempting to enforce the existing telephone rates or that they were threatening to prosecute appellant or trying to collect fines or penalties from appellant in any event; that appellant's pleadings were insufficient to allege any threatened wrongs or irreparable injuries; that the relief prayed for would interfere with the administrative functions lawfully given to appellees and that such, if granted, would enjoin the enforcement of a valid ordinance without sufficient lawful allegations to support the relief sought; that the relief sought would not preserve the status quo of the parties and the subject matter of the suit, but, on the contrary, such would change the status quo of the parties and the subject matter; that appellant has not exhausted its legal remedies by filing a primary suit seeking a raise in its telephone rates. Subject to the said plea in abatement and exceptions, appellees, by a verified pleading, denied generally appellant's allegations, pleaded all of the foregoing matters defensively and further pleaded that they had used all the means possible to negotiate and determine fair and reasonable telephone rates for appellant and had offered appellant fair and reasonable rates which were refused by appellant; that appellant had never advised appellees what rate or rates it considered to be reasonable and necessary to allow it a fair rate on its

property values, which values it had sworn in a written statement rendered to appellees to be $57,240, while it now claims such values to be much more; that appellant had failed to render reasonable and proper services to the general public of Dalhart.

Evidence was heard by the trial court on the plea in abatement, after which the same, together with appellees' exceptions, were overruled by the trial court and the issue of temporary injunctive relief was heard with all parties present. The evidence consisted of the oral testimony of J. Eddie Jones, Mayor of Dalhart, together with ex parte affidavits and some of the city ordinances of the City of Dalhart.

Appellant offered ex parte affidavits of several of its officers showing or tending to show the total value of its investments in Dalhart to be $243,194.11, the existing prevailing labor conditions, that its net income at Dalhart for the year 1951 was only $757.32, that it had on several occasions unsuccessfully sought a satisfactory raise in telephone rates in Dalhart, the last time being on June 2, 1952, at a formal meeting of the City Council when the rates requested by appellant were refused by vote of the City Council, which offered no reasonable rate or proposal for a settlement. The city ordinance pleaded by appellant and offered in evidence by appellees was enacted by the City Council of Dalhart on August 31, 1921, to "take effect and be in full force" thereafter, and it fixed the monthly telephone rates for Dalhart at $1.75 for a party line, $2.50 for residence telephone, $3.50 for office telephone, $4 for office desk telephone and additional charges of 50¢ or $1 for extension lines. With reference to making a change thereafter in telephone rates in the City of Dalhart, the said city ordinance likewise:

"* * * provided further that said rates shall not then be changed until the said Dalhart Telephone Company, its successors or assigns, has served the Mayor of the City of Dalhart with written notice of its intention to change said rates, said notice to contain a s*chudle* of the rates as proposed to be charged and to be accompanied with an appraisal of the physical properties of the Dalhart exchange and incoice thereof, and statement of expenses and disbursements of said Company, and Provided further that no change shall be made in said rates of said Dalhart Telephone Company until after the expiration of sixty days from the service of said notice, appraisment, inventory, statement of expenses and disbursements, as aforesaid, and if, upon the expiration of said sixty days, the said City of Dalhart shall protest in writing against said increase in rates, then no suit shall be filed by the said Dalhart Telephone Company in an effort to put said rates into effect until after the expiration of sixty days from the date of the service of such and Provided further that no proposed increase in rates shall be put into effect for service within the City of Dalhart by the said Dalhart Telephone Company, its successors or assigns, which shall yield to the said Dalhart Telephone Company, its successors or assigns, a net income in excess of ten per cent of the fair valuation of the properties constituting the Dalhart Exchange and Provided further that the method of fixing the rates above set out shall not affect the rights either of the City of Dalhart, Texas, or of the Dalhart Telephone Company, its successors or assigns, to resort to such statutory remedies as they may now have or as may hereafter be conferred upon them by Act of Legislature."

J. Eddie Jones, Mayor of Dalhart, testified, in effect, that appellant had not complied with the provisions of the said ordinance in connection with their request for a raise in telephone rates. He further testified that he had been City Mayor since April of 1951 and that he presided over the meeting of the City Council on June 2, 1952, when appellant last negotiated a raise in telephone rates. That one day prior to the said date he received only a pamphlet from appellant giving the valuations of the Company's property but he did not receive at any time any written notice

of appellant's intention to change the rates or any suggested rates appellant wanted or any schedule of proposed rates to be charged or any invoices. The witness further testified, in effect, that appellant's agents attended the Council meeting on June 2, 1952, for the purpose of obtaining an increase in the telephone rates, although they had not met the requirements of the city ordinance in question; that on the said occasion, the City Council offered appellant an over-all 35% increase in telephone rates and would have passed an order then giving appellant such a raise but appellant, through its representatives present, said: "No. We want what we are asking for or nothing at all". Appellant's agents asked for a 61% raise or they said it would average 61% and they would not accept anything less. The testimony of this witness was not controverted. Ray F. Red, assistant vice president of the Telephone Company, stated in his sworn statement that appellant's requested raise in rates was refused by the City Council on June 2, 1952, and that during all their negotiations no "reasonable proposal for settlement was ever made by the City Council."

 After considering the pleadings and the evidence heard, the trial court by order entered refused the temporary injunction sought by appellant, from which order it appealed. The sole question to be here determined is whether or not the trial court abused its discretion in refusing the temporary injunction. City of Farmersville v. Texas-Louisiana Power Co., Tex. Civ.App., 33 S.W.2d 272. In considering this matter, we must view all the evidence in a light most favorable to the trial court's judgment. District Trustees of Dist. No. 46 and Freestone County v. County Trustees of Freestone County, Tex.Civ.App., 197 S.W.2d 579. The granting or refusing of a temporary injunction is within the sound discretion of the trial court and its action will not be disturbed on appeal unless it clearly appears from the record that there has been an abuse of discretion. Harding v. W. L. Pearson & Co., Tex. Com.App., 48 S.W.2d 964. In this action no findings and conclusions were filed and none requested in so far as the record reflects. That being true, every legitimate presumption consistent with the record must be indulged in favor of the trial court's judgment. It is likewise a well settled rule of law that an appellate court will sustain the judgment of a trial court if it is correct on any theory of law applicable to the record, regardless of whether or not the trial court gives the correct legal reason for its judgment or whether or not any reason at all is given. Construction & General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. The rules governing temporary restrictive relief and temporary mandatory relief are not always the same. If an issue is made involving property rights or monetary values, an application for a temporary injunction seeking restrictive relief, such as appellant here seeks, is usually an ancillary action filed in connection with a principal suit seeking temporary relief while waiting for recovery of some nature in the principal suit and the ancillary jurisdiction is exercised by a court of equity.

"The law is well settled in this state that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy, and not to determine the respective rights of the parties under the cause of action asserted or defenses urged. Stolte v. Karren, Tex. Civ.App., 191 S.W. 600; Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810 [26 A.L.R. 1210]; City of Texarkana v. Reagan, 112 Tex. 317, 247 S.W. 816; Lane v. Jones, Tex. Civ.App., 167 S.W. 177; Galveston & W. R. Ry. Co. v. City of Galveston, Tex.Civ.App., 137 S.W. 724; 22 Cyc. 740; Joyce on Injunction, § 109.

"(4) If the effect of the granting of a temporary injunction does more than preserve the status of the property as it had theretofore existed, and accomplishes the whole object of the suit, it would be improper for the court to grant same, as the legitimate purpose of the temporary injunction is merely

to preserve the existing condition until a final hearing can be had on the merits. The court is without authority to divest a party of property rights without a trial and any attempt to do so is void. 1 Beach on Injunction, p. 128; Calvert v. State, 34 Neb. 616, 52 N.W. 687; Arnold v. Bright, 41 Mich. 207, 2 N.W. 16." James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959, 960.

"An interlocutory injunction is a provisional remedy allowed before a hearing on the merits with the sole object to preserve the subject in controversy in its then existing condition. It merely prevents the doing of any act whereby the right in controversy may be materially injured or endangered before a final decree can be entered by the court. The rights of the parties are not concluded by the interlocutory order entered, as its entry is not dependent upon the adjudication of the merits of the case. In general, it may be stated that it is the duty of the trial court to grant a temporary writ of injunction when it is made to appear that there is a substantial controversy between the parties, and that one of the parties is committing an act or threatening the immediate commission of an act that will destroy the status quo of the controversy, before a full hearing can be had on the merits of the case and final judgment pronounced. It may also be stated that generally it is the duty of a trial court to refuse an application for a temporary writ of injunction when the effect of the operation of such writ would be to change or destroy the status quo of the matter in controversy." City of Farmersville v. Texas-Louisiana Power Co., supra [33 S.W.2d 274].

These rules of law are approved in Midland Building & Loan Ass'n v. Sparks Chapel Colored M. E. Church in America, Tex.Civ.App., 35 S.W.2d 774; Morgan v. Smart, Tex.Civ.App., 88 S.W.2d 769; Kimbrough v. State, Tex.Civ.App., 139 S.W. 2d 165, affirmed Tex.Civ.App., 144 S.W.

2d 401; Parrino v. Dubois, Tex.Civ.App., 220 S.W.2d 305; 24 Tex.Jur. 123, Sec. 86; 32 C.J. 20, Sec. 2; 43 C.J.S., Injunctions, § 2. In the case at bar "status quo" was the existing telephone rates being charged by appellant at the time this action was filed on June 30, 1952, as provided for in the city ordinance of date August 31, 1921, which ordinance was pleaded by appellant. Such existing rates constituted the condition or status quo as recognized and defined by the foregoing authorities.

The power to fix and regulate rates to be charged by public utilities is a legislative function and may be fixed by the State in political subdivisions. Coleman Gas & Oil Co. v. Santa Anna Gas Co., Tex.Com.App., 67 S.W.2d 241; Texas-Louisiana Power Co. v. City of Farmersville, Tex.Com.App., 67 S.W.2d 235; 34 Tex.Jur. 720–21, sections 18 and 19. Such power and authority must be exercised only by the body to which it has been intrusted and cannot be delegated by it to others. Green v. San Antonio Water Supply Co., Tex.Civ.App., 193 S.W. 453. Under the provisions of Article 1119, as amended, and as pleaded by appellant, the Legislature delegated to the municipalities of this State, including the City of Dalhart, the right to fix and regulate rates such as are being here considered. The City of Dalhart, through its Mayor and City Council, enacted the ordinance here pleaded by appellant.

The said city ordinance pleaded by appellant provided for the methods to be pursued by appellant to obtain an increase in its telephone rates. The evidence conclusively shows and it is undisputed that the methods provided for and the remedy to be pursued for obtaining an increase in rates were not complied with by appellant. No contention was made that such procedure and methods were unlawful, arbitrary or imposed an undue burden upon appellant. Appellant was silent about the matter except to plead the ordinance and urge that appellees be required to exercise the right given them under its provisions to increase the rates, and to seek restrictive relief until such was done to the satisfaction of

appellant. There is nothing to show that the conditions precedent set forth in the ordinance were not reasonable or proper or that such could not have been easily complied with by appellant.

The rule of law concerning conditions precedent and the necessity of compliance therewith before an action may be brought in court is not a new rule, and the same has been stated as follows:

"Any condition precedent to the right to maintain an action must be performed or complied with, unless it is dispensed with, or prevented by some act of defendant; and the fact of performance or excuse of nonperformance must be alleged and proved in order to warrant a recovery." 1 C.J. 976, Section 72; See, also 1 C.J.S., Actions, § 25.

"Notice by one party to another, as a condition precedent to an action by the former against the latter, is in some cases expressly required by statute . . . ." 1 C.J. 977, Section 73; Sawyer v. El Paso & N. E. Ry. Co., 49 Tex. Civ.App., 106, 108 S.W. 718; See, also, 1 C.J.S., Actions, § 26.

In the Sawyer case the court sustained a plea in abatement on the grounds that certain statutory laws of the State of New Mexico requiring an affidavit to be filed with the railroad company within ninety days before beginning suit had not been complied with. The trial court's judgment was reversed for other reasons, however. This rule has been recognized and sustained in other Texas cases wherein the provisions of city ordinances fixing conditions precedent must be complied with before filing a suit. City of Ft. Worth v. Shero, 16 Tex.Civ.App. 487, 41 S.W. 704, writ refused; Parsons v. City of Ft. Worth, 26 Tex.Civ.App. 273, 63 S. W. 889, writ refused; Hallman v. City of Pampa, Tex.Civ.App., 147 S.W.2d 543, writ refused. According to the record before us and the authorities cited the trial court was justified in finding and concluding that appellant had failed to comply with the conditions precedent set out in the city ordinance it had pleaded and upon which it was relying in part as authority for a raise in rates and that appellant must comply with such conditions precedent before trying to maintain a suit of any nature seeking a raise in rates. It has likewise been held that a party is not entitled to judicial relief for a supposed or threatened injury until prescribed administrative remedies have been exhausted. Amalgamated Ass'n of Street Electric Ry. & Motor Coach Employees of America, Division 1142 v. McDowell, Tex.Civ.App., 150 S.W.2d 866. It is also a well recognized rule of equity that no action for injunctive relief will lie until petitioner therefor has exhausted all of his legal remedies. Fluellen v. County Board of Education of Dallas County, Tex.Civ.App., 202 S.W.2d 510.

When appellant filed this action it assumed the burden of pleading affirmatively and proving, among other things, that it had complied with the conditions precedent set forth in the city ordinance it had pleaded and that it had exhausted all administrative remedies to get its rates raised to no avail or it should have pleaded and proven that such was not necessary or that appellees had prevented it from complying with the conditions precedent and the administrative remedies required. This appellant failed to do. On the contrary, appellees pleaded and proved conclusively appellant's failure so to do. For these reasons alone the trial court was justified in denying the relief sought.

It was within the trial court's discretion and it was justified in finding as a matter of fact, according to the uncontroverted evidence, that the offer made by appellees to raise the rates 35% for appellant was a reasonable offer but the same was refused by appellant, which was not therefore entitled to the relief sought. This finding alone, which we must resolve in favor of the trial court's judgment, precludes recovery, whether we agree with such finding or not. The trial court was also justified in concluding that appellant's efforts to obtain ultimate relief and accomplish the whole object of its purpose by injunctive relief was improper, for which reason the relief sought should not

be granted, as was held by the Commission of Appeals in the case of James v. E. Weinstein & Sons, supra, with many authorities there cited in support of the rules announced.

 In an application for injunction the rule is well recognized that allegations of fact must be direct, certain and particular. Shannon v. Hay, Tex.Civ.App., 153 S.W. 360; Ricketts v. Ferguson, Tex.Civ. App., 64 S.W.2d 416. An application for an injunction should be strictly construed against the pleader and averments must negative every inference of facts under which petitioner would not be entitled to relief, particularly where public officers in the discharge of official duties are sought to be restrained. Wertheimer v. Walker, Tex.Civ.App., 96 S.W.2d 831; Barkley v. Conklin, Tex.Civ.App., 101 S.W.2d 405. Injunctive relief is an extraordinary remedy, and a party seeking it must show himself clearly to be entitled to it. An application therefor must allege valid grounds and negative every reasonable inference on which the act may not be legal and proper. Sneed v. Ellison, Tex.Civ.App., 116 S.W. 2d 864. Without here setting out appellant's lengthy pleadings, suffice it to say that a careful examination of the said pleadings reveals that appellant here did not meet the requirements of the foregoing rules of law in its application for an injunction and the trial court was justified in so concluding.

Nowhere did appellant plead or prove that appellees were attempting to enforce by suit or otherwise the collection of telephone rates set forth in the ordinance pleaded by it. Nowhere did appellant plead or prove that appellees were seeking to enforce such ordinance against appellant by the collection of any fine or penalty as a result of criminal prosecutions against appellant for its failure to comply with the rates set forth in the said ordinance. Appellant was charged with establishing these facts before it would be justified in seeking relief to prevent such from happening.

Nowhere has appellant attacked the validity of the city ordinance relied on either in its pleadings or by proof. Neither has appellant charged that the said city ordinance is unreasonable. Appellant and its predecessors have recognized the validity of the said ordinance for more than twenty years.

"Injunction against the enforcement or execution of a valid statute or ordinance would encroach upon legislative functions, and a writ will not be granted for such purpose however unwise or inexpedient the law may be." 24 Tex. Jur. 62, Section 44.

For the reasons stated, it is our opinion that the trial court was justified in denying the relief sought by appellant. Its judgment is therefore affirmed.